90

IRISH FREE STATE and Others, Plaintiffs, *v.* GUARANTY SAFE
DEPOSIT COMPANY and Others, Respondents.

FRIENDS OF IRISH FREEDOM, as Claimant Based upon Ten Bond
Certificates for Ten Thousand ($10,000) Dollars Each, Numbered
from 6 to 15, Inclusive, and upon an Alleged Subscription of
One Hundred Thousand ($100,000) Dollars of Bond Certificates
of the Republic of Ireland Loans, Appellant, *v.* PETER J. BRADY
and Others, Receivers Herein, Respondents.

First Department, June 24, 1931.

*John J. Kirby,* for the appellant.

*John T. Ryan* of counsel [*Frank P. Walsh,* attorney], for the defendants, respondents.

*Philip A. Carroll* of counsel [*C. M. Thorne* with him on the brief; *Shearman & Sterling,* attorneys], for the receivers, respondents.

TOWNLEY, J. Appellant, Friends of Irish Freedom, claims a prorated dividend from the receivers appointed by the Supreme Court in the case of *Irish Free State* v. *Guaranty Safe Deposit Company* (129 Misc. 551). The basis for the claim is the alleged ownership of ten bond certificates, numbers 6 to 15, inclusive, for $10,000 each, or for a total subscription of $100,000. Objections were made to these claims on the ground that no subscription to the loan had been made by the claimant, that the bond certificates in the possession of the claimant had not been issued or delivered to it by any persons authorized to do so, and that the moneys in dispute had been advanced as a gift.

Claimant raised a fund of about $1,000,000, called the Irish Victory Fund, early in 1919. In the summer of 1919, Eamon De Valera, the President of the Irish Republic and one of the trustees appointed by Dail Eireann, came to the United States to float a $25,000,000 loan authorized by the Dail Eireann. On September twentieth De Valera wrote to the claimant saying that the expense of floating the loan would be heavy and " to meet these expenses I would suggest that the Friends of Irish Freedom give in advance their subscription for the amount in certificates which the organization proposes to take. This sum can then be placed at the disposal of the directors of the drive." On the twenty-ninth of September claimant's trustees passed a resolution recommending that in accordance with De Valera's invitation and with the conversation which the board had with De Valera on September twenty-eighth, Friends of Irish Freedom would advance " a present loan " of a sum not to exceed $100,000 to the American Commission on Irish Independence to cover expenses of the drive for the loan. On October 3, 1919, by a resolution of its National Council, claimant confirmed this by voting a loan of $100,000. The $100,000 authorized by these resolutions was paid by check to one Thomas J. Maloney, Director of Finance or Treasurer of the American Commission of Irish Independence, the directors of the drive. The letter notifying Maloney of the passage of these resolutions referred to the payment as a present loan " for the purpose of covering the preliminary expenses in connection with the President's tour and the Irish Republican bond certificate

issue." Later, De Valera and his cotrustee, O'Mara, at a conference in the Waldorf-Astoria Hotel in New York in February, 1920, stated that the financing of the bond issue was a matter for the Irish Republic to attend to, and that all the expenses of the drive should be paid out of the receipts from the drive. Following this announcement, the National Council of appellant on February 13, 1920, passed a resolution " that the $100,000 already advanced to the American Commission on Irish Independence be now considered as payment for bond certificates of the Irish Republic in the amount of $100,000. * * * The secretary was instructed to communicate with Mr. James O'Mara accordingly." This resolution was communicated to O'Mara, one of the trustees designated by the Dail Eireann, who was in direct charge of the bond drive. O'Mara acknowledged the communication and thanked claimant for the subscription. Inclosing a tender form of the same character as was sent to all the subscribers to the loan, he requested that the claimant fill out the blanks and return the form of subscription to the loan. This letter returning the tender form was duly signed and receipt for the subscription was sent to claimant by O'Mara. The entry in the bank ledger of the trustees of Dail Eireann shows a credit to claimant of $100,000 on the date on which the tender form was received by the trustees from claimant. Finally, the entries on the trustees' ledger, which is the official bond record, set forth as paid by claimant, a subscription of ten certificates of $10,000 each.

On these facts, all of which are supported by documentary evidence, it appears that the Irish Republic agreed that claimant might relinquish its claim to immediate payment out of the funds collected by De Valera's bond drive and substitute in place of the right to immediate payment the deferred obligation of bonds. In reality this was a change in form rather than in substance. At the time the original payment was made it was the obvious understanding of the parties that it represented the amount that the claimant was willing to subscribe in the new bond issue. Its designation as a loan was rendered necessary because the Irish Republic was not then ready to accept subscriptions. Two trustees, De Valera and O'Mara, were in this country at the time this change was made. Both were fully cognizant of claimant's desire to substitute a deferred obligation in place of its then matured claim. We think that De Valera, as representative of the Dail Eireann, was fully authorized to agree to this change in the nature of the Irish Republic's obligation to claimant. The change was obviously for the benefit of the general financial situation of the Irish Republic. We think, however, that the authority for making the substitution

is not to be looked for in the powers of O'Mara and De Valera *qua* trustees of the fund, but in O'Mara's and De Valera's general powers as financial representatives of the Dail Eireann. Taking this view of the facts, the question of law raised by the learned referee, that all three trustees should concur in the exercise of an act involving discretion, is not in point. The trustees were under a duty to obey official instructions from the Dail Eireann, and, to the extent that the act involved an official act of the Dail Eireann, De Valera was fully empowered to assent to modification of the obligation.

The other point raised by respondents is that since the Friends of Irish Freedom funds were all raised by public subscription for the benefit of various purposes of interest at the time to Irish-Americans, it must be held that any money disbursed by the trustees of Friends of Irish Freedom were gifts as matter of law and could not be loans. Nothing is presented showing that the trustees were unable to make loans of the funds which they had collected. Indeed, the contrary fact appears. At no time was any statement made suggesting that this advance of money which from the beginning was called a loan should be considered a gift. The finding that the advance was a gift is not supported by the evidence and should be reversed.

The objection that the physical delivery of the bonds was unauthorized is of no consequence. If appellant's claim as subscriber is valid, it is entitled to share in the fund irrespective of any question of a physical delivery of the bonds. It is, therefore, unnecessary to discuss the authority of the person making actual delivery on behalf of Dail Eireann.

The judgment should be reversed, with costs, and judgment should be entered allowing the claims and providing that claimant shall share in the fund now in the hands of the receivers, respondents, *pro rata* with the other subscribers to the bond certificates of the first and second national loan of the Republic of Ireland, with costs.

FINCH, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed, with costs, and judgment should be entered allowing the claims and providing that claimant shall share in the fund now in the hands of the receivers, respondents, *pro rata* with the other subscribers to the bond certificates of the first and second national loan of the Republic of Ireland, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.